JONATHAN SHUB (SBN 237708)
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, Pennsylvania 19102
(215) 564-2300 tel
(215) 851-8029 fax
jshub@seegerweiss.com

[Additional counsel on signature page]

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lauren Scott, Kathleen Koffman and Heather Silversmith, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Apple, Inc.,<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Lauren Scott, Kathleen Koffman and Heather Silversmith,

individually and on behalf of the class described below, by their attorneys, make

the following allegations pursuant to the investigation of counsel and based upon

information and belief, except as to allegations specifically pertaining to Plaintiffs

and counsel, which are based on personal knowledge.

## I.    OVERVIEW OF THE ACTION

1.    Plaintiffs bring this class action on behalf of themselves and other

parents and guardians who (a) permitted their minor children to download from

1   defendant Apple, Inc. ("Apple" or "Defendant") a free application ("App") and (b)

2   then incurred charges for game-related voidable purchases that the minor was

3   induced by Apple to make, without the parents' and guardians' knowledge or

4   authorization.

5       2.      In addition to its distinction as a market leader in the manufacture,

6   marketing and sale of computers and computing devices, Apple is also the leading

7   seller of "Apps," i.e., software applications that users download on their mobile

8   computing devices.  Among the many thousands of Apps that Apple offers for sale

9  
10  are gaming Apps targeted at children.  Although numerous gaming Apps are

11  offered for free and may be downloaded at no cost, many such games are designed

12  to induce purchases of what Apple refers to as "In-App Purchases" or "In-App

13  Content," i.e., virtual supplies, ammunition, fruits and vegetables, cash and other

14  
15  fake "currency," etc., within the game in order to play the game as it was designed

16  to be played ("Game Currency").  These games are highly addictive, designed

17  deliberately so, and tend to compel children playing them to purchase large

18  quantities of Game Currency, amounting to as much as $100 per purchase or more.

19  As such, the sale of Game Currency to minors is highly lucrative.

20      3.      Apple requires its users to authenticate their accounts by entering a

21  password prior to purchasing and/or downloading an App or buying Game

22  Currency.  Until recently, however, once the password was entered, Apple

23  
24  

CLASS ACTION COMPLAINT

permitted the user, even if a minor, to buy Game Currency for up to fifteen minutes without re-entering the password.  This practice enabled minors to buy Game Currency, in one-click sums of $99.99 or more, without entering a password, causing Apple to pocket millions of dollars from such Game Currency transactions with minors and without the authorization of their parents, whose credit cards or PayPal accounts are automatically charged for the purchases.  Further, because the passwords now required for purchases of Game Currency are the same passwords required for any Apple purchase, minors who are aware of the password may purchase Game Currency without authorization from their parents for subsequent purchases.

4.     Apple's practice of selling Game Currency to children, garnering millions of dollars of ill-gotten gains thereby, has attracted the attention of the Federal Trade Commission ("FTC").  Such attention caused Apple in early 2011 to begin requiring the entry of a password for all individual transactions, and to warn users that "free" games may contain in-app content for sale.  Nevertheless, Apple continues to sell Game Currency to minors, evidently raking in more than $1 million per month from the "Smurfs' Village" App alone.

5.     Plaintiffs bring this action for monetary and equitable relief under California's contract laws, Consumers Legal Remedies Act, Business and Professions Code Sections 17200 *et seq.*, and/or for Unjust Enrichment.

CLASS ACTION COMPLAINT

## II.   JURISDICTION AND VENUE

6.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).  This is a class action involving more than 100 class members.  Plaintiffs Scott and Silversmith, and many other members of the Class, are citizens of a state different from Defendant, and the amount in controversy, in the aggregate, exceeds the sum of $5 million exclusive of interest and costs.

7.   Defendant is a California corporation, has its principal place of business in Cupertino, California, transacts business in this District, has subjected itself to this Court's jurisdiction through such activity, and a substantial part of the events and omissions giving rise to the claim occurred in this District.  Accordingly, venue is proper in this District under 28 U.S.C. § 1391.

## III.   PARTIES

8.   Plaintiff Lauren Scott resides in Granbury, Texas with her husband and their 3½-year-old son.  Ms. Scott permitted her son to download onto her iPhone the "free" gaming App "Tap Zoo."  Because it said it was "free," Ms. Scott entered her password in her iPhone, and handed the iPhone to her son. ***Within 60 seconds***, her account was charged $99.99 plus tax ($8.25) for such Game Currency as a "Trunk of Coins."  That transaction between Apple and a four-year-old child cost Ms. Scott $108.24 within one minute after she entered her password and handed her iPhone to her son.

CLASS ACTION COMPLAINT

9.     Plaintiff Kathleen Koffman resides in Gardena, California with her nine-year-old son.  Ms. Koffman downloaded onto her iTouch the "free" gaming Apps "X-Mas Resort" and "F.A.S.T." for her son.  Ms. Koffman, however, was completely unaware of the fact that within *several days*, her account was charged $338.72 for such Game Currency in the X-Mas Resort App as "Shells" and $329.87 for such Game Currency in the F.A.S.T. App as "Missiles" and other forms of ammunition.

10.     Plaintiff Heather Silversmith resides in Rockville, Maryland with her husband, their seven-year-old son and their six-year-old daughter.  Without Ms. Silversmith's knowledge and authorization, Ms. Silversmith's daughter purchased "Gems" while playing the "Fashion Story" App, and Ms. Silversmith's iTunes account was charged $99.99 for her six-year-old daughter's purchase.

11.     Defendant Apple is a California corporation with its principal place of business in Cupertino, California.

IV.   **FACTUAL ALLEGATIONS**

12.     Apple is one of the leading manufacturers and sellers of computing products, including the iMac desktop computer, MacBook laptops, iPad tablets, iPhone smart phones, and iPod and iTouch handheld music players and gaming devices.

13.     Apple also sells content (e.g., music, movies, TV shows, audio books and Apps) that can be downloaded on its and other manufacturers' computing devices.  Apple sells Apps through its "App Store," which may be accessed directly from certain devices (such as, e.g., iPads, iPhones and iTouches) or through other Apple-owned retail outlets (e.g., iTunes, Mac App Store, iBookstore).

14.     Apple offers Apps in many genres, including travel, business, education, finance, entertainment and games.  Games are by far the most downloaded of all genres.  Apps can be downloaded for free, or for a licensing fee that ranges from $.99 to $9.99 or more.  It is the gaming Apps that Apple targets and sells to minor children that are the subject of this action.

15.     Apple is by far the leading retailer of Apps.  Apps are either developed by Apple or licensed to Apple by independent App developers.  The App developers license their Apps to Apple for sale at iTunes, and Apple splits the revenues earned from the sale of the App, or from the sale of In-App Purchases, with the App developer.

16.     Apple supervises and controls the function and operation of the Apps it sells.  Before an App is made available by Apple, Apple staff test the App and confirm its compliance with dozens of rules that Apple imposes unilaterally.  If

Apple deems an App noncompliant with Apple's rules, Apple will not make the App available for sale.

17.     In all instances relevant to this action, the sale of the App and/or any Game Currency is a transaction directly between Apple and the consumer. There is no privity between the user and the developer of the App (unless Apple itself is the App developer); Apple, and Apple alone, is the provider to the user of the App; Apple charges its customer's credit card or PayPal account, and indeed an App developer never receives a customer's credit card number or PayPal account information.

18.     Anyone thirteen years old or older can open an account to purchase (i.e., license) content from Apple. Opening an account requires, among other things, selecting a user name and password, providing certain contact and other information, and agreeing to Apple's Terms & Conditions. Users may then make purchases in any number of ways, including payment by "iTunes Cards," "iTunes Gift Certificates," "Content Codes" "Allowance Account balances," and, most frequently, by supplying Apple with a credit card number or PayPal account. For users who specify credit card or PayPal payment, Apple automatically draws funds from the account holder's credit card or PayPal account.

19.     Prior to the purchase of an App, Apple requires account holders to enter their password. Until recently, however, once the account holder entered that

CLASS ACTION COMPLAINT

password, he or she (or in cases relevant to this Complaint, his or her minor child) could make purchases for up to fifteen minutes without re-entering the password. Thus, a parent could enter his or her password to permit a child to download a free gaming App, and then allow the child to download and play the game.  What Apple did not tell parents, however, is that their child was then able to purchase Game Currency for fifteen minutes without any supervision, oversight or authorization.

20.    In early 2011, Apple appears to have changed its practice to require the input of a password for every individual purchase, thereby ending the fifteen minute purchase window.  Apple ostensibly made this change because the FTC was about to commence an investigation into Apple's improper sales practices. Even after this change, Apple continues to sell Game Currency to minors.  Minors thirteen and older are permitted to open their own Apple accounts, and minors younger than thirteen may purchase Game Currency by using their parents' general Apple password (no special Apple password is required to purchase Game Currency).

21.    As alleged above, many games are targeted to minors, and are free or cost a nominal charge to download.  Many such games, however, are designed solely to lure minors to purchase Game Currency in order to meet the objectives of the game.

CLASS ACTION COMPLAINT

22. Such games, by design, are highly addictive. They were developed strategically to induce purchases of Game Currency. For example, the game "Smurfs' Village" is free to download. The object of the game, however, is to build a virtual village, and the construction process is greatly sped up by the purchase of "Smurfberries," Game Currency that costs real money. Embedded in the Smurfs' Village gaming App, the "Smurfberry Shop" offers for sale different amounts of Smurfberries. Fifty Smurfberries cost $4.99; 1,000 Smurfberries cost $59; and 2,000 Smurfberries cost $99.99. *See* following screen shots of Smurfs' Village:



CLASS ACTION COMPLAINT





23.     A news story about Apple's business scheme states:

The Federal Trade Commission has confirmed it will
investigate mobile games that are advertised as free but
then entice players into buying virtual goods within the
game, especially those that target younger users. This
comes after several complaints surfaced by parents who

CLASS ACTION COMPLAINT

found out their children were racking up huge purchases without understanding what they were doing, including one young gamer who managed to download more than $1,400 in virtual Smurfs' currency.

Smurfs' Village leads the headlines for this story. It's a "free" iPhone game clearly targeting a young demographic. Once in the game, players are asked to spend Smurfberries at every turn. That problem is solved easily enough with a menu that offers the ability to buy more berries. Even though Smurfberries aren't real, the money used to buy them is.

Players are lured in by enticing pictures of huge bucketfuls of Smurfberries, and just a couple taps is all it takes to drain money out of an iPhone account holder's credit card and make players flush with in-game funds.

The app does ask users to confirm purchases, but as the FTC notes, some users may not fully understand what they're confirming. "Consumers, particularly children, are unlikely to understand the ramifications of these types of purchases," wrote FTC chairman Jon Leibowitz in a statement.

Massachusetts Congressman Edward Markey responded, "What may appear in these games to be virtual coins and prizes to children result in very real costs to parents. I am pleased that the FTC has responded, and as the use of mobile apps continues to increase, I will continue to actively monitor developments in this important area."

The Smurfs game has gained so much attention because it exploded to the #1 spot of top-earning iPhone games. That's when the media learned of the easy microtransaction system in the game. There's even a button to purchase $100 in Smurfberries, which most rational, hard-working people would probably never click, but appears mouthwatering to players who think they're just innocently playing a game.

CLASS ACTION COMPLAINT

1

> While some of the charges definitely come as the result
> of a parent legitimately buying berries for their kid, there
> is also controversy over the 15-minute user
> authentication buffer. A dad could download the Smurfs
> game onto his iPad and hand it over to his daughter to
> play. The daughter can then rack up as many charges as
> she wants for 15 minutes before the app will ask for re-
> verification of the account. Before you know it, your
> credit card statement's been smurfed right in the smurf.

2

3

4

5

6

7    Mark Raby, *FTC agrees to investigate "deceptively free" iPhone games*,

8    http://www.gamesradar.com/iphone/iphone/news/z/a-2011022318018755018/g-

9    201010071388669064.

10       24.    Smurfs' Village is a tremendous moneymaker for Apple:

11
> [An] 8 year old bought $1,400 of Smurfberries. Free to
12 > download, but billed for in-app purchases. [App
> developer] Capcom is rumored to make $4 million/month
13 > from Smurfberries. Apple receives 30%. [The] Mother
> said this preyed on children -- game is for kids 4+.
14

15   Farnaz Alemi (with James Chang), "Gaming the System: Whether Minors Should

16   be Able to Disaffirm Online," posted on Rebecca Tushnet's 43(B)log,

17   http://tushnet.blogspot.com/2011/04/governing-magic-circle-panel-3.html.

18       25.    Smurfs' Village is by no means the only App that preys on children in

19   such manner.  Apple offers many games that use the same bait-and-switch business

20
scheme as Smurfs' Village.  Apple entices the child with a free download of a
21
gaming platform that then offers the sale of irresistible Game Currency in order to
22

23   enjoy the game as it was designed to be "played."  These games have no

24

1  redeeming purpose whatsoever.  Within seconds of "playing" them, one is led to a

2  screen that sells virtual currency, so that the "player" can build things or "have"

3  other virtual things.  Such games include "Tap Zoo," which as of the date of the

4  filing of this complaint is the new number one revenue generating App, and which

5  sells virtual trunks, satchels, pouches and vials of coins and stars, which are to be

6  used in order to purchase virtual animals.

7

8      26.     What is particularly egregious about Tap Zoo is that the store lists

9  items for sale, but does not display how much the items cost.  That only occurs

10  when a confirmation window is displayed.  To illustrate, *see* the following screen

11  shots of the new number one App Tap Zoo:

12



13

14

15

16

17

18

19

20

21

22

23

24

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7



8
9
10
11
12
13
14
15



16
17
18
19
20
21
22
23
24



CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12



13

14    27.    Other "free" gaming Apps that contain embedded Gaming Currency

15  for sale with real money include "Bakery Story" (which sells virtual gems that are

16  used to acquire items for the virtual bakery), "Treasure Story" (which sells virtual

17  gems), "City Story" (which sells virtual cash), "Tap Fish" (which sells virtual "fish

18  bucks"), "Glass Tower" (which sells virtual "level packs"), "Sundae Maker"

19  (which sells virtual ice cream and toppings), "Cake Maker" (which sells virtual

20  cake ingredients and other cake-making items), and many, many others.  In light of

21  how much revenue is flowing to Apple through Smurfs' Village, it is clear that

22  these games, taken collectively, put substantial sums in Apple's coffers.

23

24

CLASS ACTION COMPLAINT

28.   The targeting of children by Apple and inducing them to purchase, without the knowledge or authorization of their parents, millions of dollars of Game Currency is unlawful exploitation in the extreme.  Fortunately for the members of the Class, such purchases of Game Currency constitute voidable contracts because they were entered into with minors.

29.   Either in response to the FTC's investigation, or as a result of a guilty conscience, Apple now purports to display the following warning next to the "Install" button of the App: "PLEASE NOTE: [Smurfs' Village] is free to play, but charges real money for additional in-app content.  You may lock out the ability to purchase in-app content by adjusting your device's settings."  **Nevertheless, Apple continues to sell Game Currency to minors.**

30.   Apple has not offered to return to its account holders any of the millions of dollars it received from their minor children's purchases of Game Currency.

## V.   CLASS ACTION ALLEGATIONS

31.   Plaintiffs bring this action as a class action for monetary and equitable relief pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:  All persons in the United States who paid for an unauthorized purchase of Game Currency made by their minor children (the "Class").  Excluded from the Class are Apple; any entity in which it has a

CLASS ACTION COMPLAINT

controlling interest; any of its parents, subsidiaries, affiliates, officers, directors, employees and members of their immediate families; and members of the federal judiciary.

32.     The members of the Class are ascertainable, and are so numerous that joinder is impracticable.  Plaintiffs believe there are thousands of members of the Class, whose names and addresses are in Apple's records.

33.     There are questions of law or fact common to the Class, and such questions predominate over individual questions.  Apple pursued a common course of conduct toward the Class as alleged.  This action arises out of a common nucleus of operative facts.  Common questions include:

        (a)     Whether Apple sold Game Currency;

        (b)     Whether Apple sold Game Currency to minors;

        (c)     Whether Apple knew that many gaming Apps it sells are designed to induce minors to purchase Game Currency;

        (d)     Whether Apple intended for minors to purchase such Game Currency without the knowledge or authorization of the minors' parents or guardians;

        (d)     Whether Apple's sales to minors of Game Currency constitute voidable contracts;

        (e)     Whether Apple's scheme to induce minors to purchase

CLASS ACTION COMPLAINT

Game Currency violates California's Consumers Legal

Remedies Act, Cal. Civ. Code § 1750, and Unfair

Competition Law, Business & Professions Code § 17200

*et seq.*;

(f)     Whether Apple was unjustly enriched by its scheme; and

(g)     Whether Plaintiffs and the Class have been damaged, and

if so, in what amount.

34.     Plaintiffs' claims are typical of the claims of other members of the Class, and there is no defense available to Apple that is unique to Plaintiffs. Plaintiffs paid hundreds of dollars to Apple for unauthorized purchases of Game Currency made by their minor children.

35.     Plaintiffs will fairly and adequately represent the interests of the Class.  Plaintiffs have no interests that are antagonistic to those of the Class. Plaintiffs have the ability to assist and adequately protect the rights and interests of the Class during the litigation.  Further, Plaintiffs are represented by counsel who are competent and experienced in this type of class action litigation.

36.     This class action is not only the appropriate method for the fair and efficient adjudication of the controversy, it is the superior method because:

(a)     The joinder of thousands of geographically diverse

individual class members is impracticable, cumbersome,

unduly burdensome, and a waste of judicial and litigation resources;

(b)   There is no special interest by class members in individually controlling prosecution of separate causes of action;

(c)   Class members' individual claims are relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, expensive, if not totally impossible, to justify individual class members addressing their loss;

(d)   When Apple's liability has been adjudicated, claims of all class members can be determined by the Court and administered efficiently in a manner that is far less erroneous, burdensome, and expensive than if it were attempted through filing, discovery, and trial of many individual cases;

(e)   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims to promote economies of time, resources, and limited pool of recovery;

CLASS ACTION COMPLAINT

1

2

3

4

5

6

    (f)    This class action will assure uniformity of decisions among class members;

    (g)    Without this class action, restitution will not be ordered and Apple will be able to reap the benefits or profits of its wrongdoing; and

7

8

9

10

11

12

    (h)    The resolution of this controversy through this class action presents fewer management difficulties than individual claims filed in which the parties may be subject to varying indifferent adjudications of their rights.

13

14

15

16

17

18

19

20

21

22

23

24

    37.    Further, class certification is appropriate because Apple has acted, or refused to act, on grounds generally applicable to the Class, making class-wide equitable, injunctive, declaratory and monetary relief appropriate.  In addition, the prosecution of separate actions by or against individual members of the Class would create a risk of incompatible standards of conduct for Apple and inconsistent or varying adjudications for all parties.  A class action is superior to other available methods for the fair and efficient adjudication of this action.

CLASS ACTION COMPLAINT

## VI.   CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

38.    California's substantive laws apply to every member of the Class, regardless of where in the United States the class member resides.  Apple imposes on its account holders a set of Terms and Conditions that must be accepted before becoming an account holder and before making any purchases or downloads from Apple's iTunes Store.  Among such Terms and Conditions is the following:

> The Services are operated by Apple from its offices in the United States. You agree to comply with all local, state, federal, and national laws, statutes, ordinances, and regulations that apply to your use of the Services. All transactions on the Services are governed by California law, without giving effect to its conflict of law provisions. Your use of the Services may also be subject to other laws. You expressly agree that exclusive jurisdiction for any claim or dispute with Apple or relating in any way to your use of the Services resides in the courts of the State of California.

39.    Further, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, Art. IV § 1 of the U.S. Constitution.  California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

CLASS ACTION COMPLAINT

40.     Apple's United States headquarters and principal place of business is located in California.  Apple also owns property and conducts substantial business in California, and therefore California has an interest in regulating Apple's conduct under its laws.  Apple's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

41.     California is also the state from which Apple's alleged misconduct emanated.  This conduct similarly injured and affected Plaintiff and all other class members.

42.     The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## VII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Breach/Disaffirmance of Contract)

43.     Plaintiffs repeat and re-allege herein the foregoing allegations.

44.     All Game Currency that Apple presents for sale constitutes an offer to enter into a sales contract.

CLASS ACTION COMPLAINT

45.   All Game Currency purchased by a minor constitutes acceptance of Apple's offer.

46.   Every payment made by the members of the Class for the purchase of Game Currency by their minor children constitutes consideration for the provision of the Game Currency.

47.   Accordingly, all transactions that are the subject of this Complaint are possessed of the three elements of a contract, i.e., offer, acceptance and consideration.

48.   Because the persons who accepted Apple's offers were minors, however, all such contracts are voidable and may be disaffirmed as a matter of California law.

49.   Accordingly, all such contracts should be voided and the Class should be made whole through restitution and all other remedies available under California law.

## SECOND CAUSE OF ACTION

### (Violation of the California Consumers Legal Remedies Act)

50.   Plaintiffs repeat and re-allege herein the foregoing allegations.

51.   At all times relevant hereto, there was in full force and effect the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750.

52.   Plaintiffs and the other class members are consumers within the

1  meaning of Cal. Civ. Code § 1761(d).

2      53.    Apple violated the CLRA's proscription against the concealment of

3  the characteristics, use, benefit, or quality of goods by actively marketing and

4  promoting certain gaming Apps as "free" with the intent to induce from minors the

5  purchase of Game Currency.  Specifically, Apple has violated:  (a) § 1770(a)(5)'s

6  proscription against representing that goods have uses or characteristics they do not

7  have;  (b) § 1770(a)(7)'s proscription against representing that goods are of

8  particular standard or quality when they are of another; (c) § 1770(a)(14)'s

9

10  proscription against "Representing that a transaction confers or involves rights,

11  remedies, or obligations which it does not have or involve, or which are prohibited

12  by law."

13      54.    Under California law, a duty to disclose arises in four circumstances:

14  (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the

15  defendant had exclusive knowledge of material facts not known to the plaintiff;

16

17  (3) when the defendant actively conceals a material fact from the plaintiff; or (4)

18  when the defendant makes partial representations but also suppresses some

19  material facts.

20      55.    Apple owed a duty to disclose material facts about the Game

21  Currency embedded in games it marketed, advertised and promoted to children as

22  "free."  Apple breached such duty as alleged in this Complaint.

23

24

56.     Plaintiffs and the Class suffered actual damages as a direct and proximate result of Apple's actions, concealment and/or omissions in violation of the CLRA, as evidenced by the substantial sums Apple pocketed.

57.     Plaintiffs, on behalf of themselves and for all those similarly situated, demand judgment against Apple for equitable relief in the form of restitution and/or disgorgement of funds paid to Apple.

58.     In accordance with § 1782(a) of the CLRA, on April 11, 2011, counsel in the related case *Meguerian v. Apple, Inc.* served Apple, by certified mail, with notice of its alleged violations of the CLRA.

59.     If Apple does not fully meet the demand set forth in that letter, then Plaintiffs will amend or seek leave to amend this complaint in order to seek the following relief under CLRA § 1780, for Apple's violations of CLRA §§ 1770(a)(5) and (a)(7):

* actual damages under Cal. Civ. Code § 1780(a)(1);

* punitive damages under Cal. Civ. Code § 1780(a)(4);

* attorneys' fees and costs under Cal. Civ. Code § 1780(d); and

* any other relief the Court deems proper under Cal. Civ. Code § 1780(a)(5).

### THIRD CAUSE OF ACTION

### (Violation of Bus. & Prof. Code § 17200 *et seq.*)

60.    Plaintiffs repeat and re-allege herein the foregoing allegations.

61.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the other class members, and in their capacity as private attorneys general against Apple for its unlawful, unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California's Unfair Competition Law (UCL), Business & Professions Code § 17200 *et seq.*, which prohibits unlawful, unfair and/or fraudulent business acts and/or practices.

62.    Plaintiffs assert these claims as representatives of an aggrieved group and as private attorneys general on behalf of the general public and other persons who have expended funds that Apple should be required to reimburse under UCL § 17200 *et seq*.

63.    This claim is predicated on the duty to refrain from unlawful, unfair and deceptive business practices.  Plaintiffs and the other class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.

64.    The UCL § 17200 *et seq*. prohibits acts of "unfair competition."  As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful...business acts or practices;" (b) "unfair fraudulent

CLASS ACTION COMPLAINT

1   business acts or practices;" and (c) "unfair, deceptive or misleading advertising."

2        65.    Apple violated the UCL by engaging in conduct that violated each of

3   the three prongs identified by the statute as set forth throughout this Complaint.

4        66.    Apple committed an *unlawful* business act or practice in violation of

5   the UCL § 17200 *et seq.* when it violated the CLRA.

6        67.    Apple committed *unfair and fraudulent* business acts and practices in

7   violation of the UCL §§ 17200 and 17500 *et seq.* by actively advertising,

8   marketing and promoting certain gaming Apps as "free" with the intent to lure

9   minors to purchase Game Currency in a manner likely to deceive the public.

10   

11        68.    Apple's deceptive practices were specifically designed to induce the

12   children of Plaintiffs and the other members of the Class to purchase Game

13   Currency.

14        69.    Apple's deceptive practices have deceived and/or are likely to deceive

15   Plaintiffs and members of the consuming public.

16   

17        70.    As a direct and proximate cause of Apple's violation of the UCL,

18   Plaintiffs and the Class have suffered harm in that they have not been reimbursed

19   for the purchases of Game Currency their children made from Apple.

20        71.    As a direct and proximate result of Apple's violation of the UCL,

21   Apple has been unjustly enriched and should be required to make restitution to

22   

23   

24

Plaintiffs and the Class or disgorge its ill-gotten profits pursuant to the UCL §
17203.

72.     Plaintiffs, on behalf of themselves and for all others similarly situated,
demand judgment against Apple for injunctive relief in the form of restitution,
and/or disgorgement of funds paid to Apple as alleged herein.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment (alternative claim))

73.     Plaintiffs repeat and re-allege herein the foregoing allegations.

74.     Plaintiffs and the Class have conferred benefits on Apple by paying
for the Game Currency their children purchased from Apple without their
authorization.

75.     Apple knowingly and willingly accepted those monetary benefits from
Plaintiffs and the Class.

76.     Under the circumstances alleged herein, it is inequitable for Defendant
to retain such benefits at the expense of Plaintiffs and the Class.

77.     Apple has been unjustly enriched at the expense, and to the detriment
of, Plaintiffs and the Class by wrongfully collecting money to which Apple, in
equity, is not entitled.

78.     Plaintiffs and the Class are entitled to recover from Apple all amounts
wrongfully collected and improperly retained by Apple, plus interest thereon.

79.   As a direct and proximate result of Apple's unjust enrichment, Plaintiffs and the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Apple of the benefits conferred by Plaintiffs and the Class.

80.   As a direct and proximate result of Apple's misconduct as set forth herein, Apple has been unjustly enriched.

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class defined herein;

B.   Designating Plaintiffs as representatives of the Class and their counsel as class counsel;

C.   Entering judgment in favor of Plaintiffs and the Class and against Apple;

D.   Awarding Plaintiffs and members of the Class their individual damages and attorneys' fees and allowing costs, including interest thereon; and/or restitution and equitable relief; and

E.   Granting such further relief as the Court deems just.

CLASS ACTION COMPLAINT

## VIII. JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  April 22, 2011

Respectfully Submitted,

By

JONATHAN SHUB (SBN 237708)
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, Pennsylvania  19102
(215) 564-2300

**ADDITIONAL COUNSEL**

Michael J. Boni
Joshua D. Snyder
**BONI & ZACK LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
(610) 822-0200

Simon Bahne Paris
Patrick Howard
**SALTZ, MONGELUZZI, BARRETT &
BENDESKY, P.C.**
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
(215) 575-3986

Benjamin G. Edelman
**LAW OFFICES OF BENJAMIN
EDELMAN**
27A Linnaean Street
Cambridge, MA 02138
(617) 359-3360

Attorneys for Plaintiffs

CLASS ACTION COMPLAINT